1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10

11   INLAND EMPIRE WATERKEEPER, a          Case No. 8:20-cv-01062-FLA (ADSx)
12   project of Orange County Coastkeeper, and
     ORANGE COUNTY COASTKEEPER, a          **ORDER APPROVING CONSENT**
13   California non-profit corporation,     **DECREE [DKT. 91]**

14                                          **(Federal Water Pollution Control**
                         Plaintiffs,        **Act, 33 U.S.C. §§ 1251, et seq.)**
15
16            v.
17
18   COLUMBIA STEEL, INC., et al.,
19                         Defendants.
20
21
22
23
24
25
26
27
28

## CONSENT DECREE

The following Consent Decree is entered into by and between Inland Empire Waterkeeper and Orange County Waterkeeper ("Waterkeeper" or "Plaintiffs") and Columbia Steel, Inc. ("Columbia Steel"). The entities entering this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS**, Waterkeeper's mission is to protect the region's water quality and resources so they are swimmable, drinkable, and fishable for present and future generations;

**WHEREAS**, Columbia Steel operates an industrial facility located at 2175 N. Linden Avenue, Rialto, California 92377 ("Facility");

**WHEREAS**, on or about January 21, 2020, Waterkeeper sent a letter to Columbia Steel of Waterkeeper's intention to file suit after the expiration of sixty (60) days for certain alleged violations of the federal Water Pollution Control Act pursuant to 40 C.F.R. § 135.2 ("Notice Letter").

**WHEREAS**, Waterkeeper alleges that Columbia Steel's operations at the Facility result in discharges of pollutants to the MS4 system, which flows to the Rialto Channel, the Santa Ana River, and the Pacific Ocean (collectively referred to as the "Receiving Waters") in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act, Sections 301(a), 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on June 12, 2020, Plaintiffs filed a complaint against Columbia Steel in the United States District Court, Central District of California (Case No. 8:20-cv-01062), alleging violations of §§ 301(a) and 402 of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Industrial General Permit Order 2014-0057-DWQ as amended in 2015 and 2018 (EFFECTIVE July 1, 2020) (the "IGP") at the Facility (as amended in the First Amended Complaint, the "Complaint");

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest, and therefore choose, to resolve Waterkeeper's allegations in the Complaint through settlement and entry of this Consent Decree to avoid the cost and uncertainties of litigation;

**WHEREAS**, Plaintiffs allege Columbia Steel violated the substantive and procedural requirements of the IGP and the Clean Water Act with respect to the Facility;

**WHEREAS**, Columbia Steel denies any and all allegations in the Notice Letter and Complaint relating to the Facility;

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings; and

**WHEREAS**, all actions taken by Columbia Steel pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

**1.**     The court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

**2.**     Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within the Central District of California;

**3.**     The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

**4.**     Plaintiffs have standing to bring this action;

**5.**     There are no unnamed necessary and indispensable parties to this action;

**6.**     The court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter

as is necessary for the court to resolve any motion to enforce this Consent Decree.

## I.    OBJECTIVES

**7.**    It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. § 1251, et seq., and to resolve those issues alleged by Plaintiffs in their Complaint.  Considering these objectives and as set forth fully below, Columbia Steel agrees to comply with all applicable provisions of this Consent Decree, the IGP, and all applicable provisions of the Clean Water Act.  Specifically, Columbia Steel agrees to comply with Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations set forth in the IGP in the industrial and production areas.

## II.    AGENCY REVIEW AND TERM OF CONSENT DECREE

**8.**    Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively, the "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Columbia Steel.  In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

**9.**    The term "Effective Date" as used in this Consent Decree shall mean the day the court enters this Consent Decree in its docket.  If, by the end of the 45-day review period referenced in paragraph 8, *supra*, the Federal Agencies offer no objection, the Settling Parties agree to request immediate entry of this Consent Decree by the court and if, after fourteen (14) days, the court has not entered the Consent Decree, the Settling Parties agree that any party to this agreement may request a hearing before the court to seek entry of the Consent Decree.

/ / /

**10.**     This Consent Decree shall terminate two (2) years after the Effective Date ("Termination Date"), unless tolled by delays as set forth in Paragraph 51 or there is a prior ongoing, unresolved dispute regarding Columbia Steel's compliance with this Consent Decree.

## III.   POLLUTION CONTROL REQUIREMENTS

## A.   Storm Water Pollution Reduction Measures

**11.**     The storm water pollution control measures required by this Consent Decree shall be designed and operated to comply fully with the requirements of the IGP.

**12.   Structural BMPs**

**12.1.1.**     By January 31, 2022, Columbia Steel will install infiltration and/or retention BMPs that will infiltrate and/or retain a 0.95 to 1.0 inch storm event from all industrial areas, signed and certified by a licensed engineer in the State of California and a Qualified Industrial Stormwater Practitioner.

**12.1.2.**     Columbia Steel shall collect storm water samples in accordance with Section XI.B of the IGP, even in storm events larger than a 0.95 to 1.0 inch storm, subject to the provisions of Section XI of the Permit. Columbia Steel shall analyze samples for Total Suspended Solids, Oil & Grease, pH, N+N, iron, aluminum, zinc, and copper.  If the average of the results from the four (4) QSEs exceeds applicable Numeric Action Levels ("NALs") outlined in the IGP, Columbia Steel shall comply with Section XII.D of the Permit.

**13.   ERA Documents.**  Prior to December 15, 2021, Columbia Steel shall conduct and perform a Level 1 ERA Evaluation under Section XII.C.1 of the IGP.  Prior to February 15, 2022, Columbia Steel shall prepare, perform, and submit a Level 1 ERA Report under Section XII.C.2 of the IGP.  The Level 1 ERA report shall include the evaluation, plans, and other documents required under Section XII.C.2 of the IGP with respect to N+N, Total Suspended Solids, Iron, Aluminum, and Zinc.  Prior to March 15, 2022, Columbia Steel shall prepare and submit a complete Level 2 ERA Action Plan under Section XII.D.1 of the IGP for N+N, Total Suspended Solids, Iron, Aluminum, and

Zinc. Prior to January 1, 2023, Columbia Steel shall prepare and submit a Level 2 ERA Technical Report pursuant to Section XII.D.2 of the IGP for N+N, Total Suspended Solids, Iron, Aluminum, and Zinc.  Columbia Steel shall notify counsel for Plaintiffs when the ERA Documents are uploaded to the California Storm Water Multiple Application and Report Tracking System ("SMARTS").  Plaintiffs shall provide comments, if any, to Columbia Steel within thirty (30) days of receipt of notice that the submissions referenced in this paragraph have been uploaded.  Columbia Steel shall incorporate Plaintiffs' comments into the ERA Documents or shall justify in writing why any comment is not incorporated within thirty (30) days of receipt of Plaintiffs' comments.

**B.**     **<u>Sampling and Analysis</u>**

14.     Columbia Steel will maintain a recording rain gauge capable of recording rainfall to 0.1 inches.  Columbia Steel shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data to Plaintiffs with Columbia Steel's Monitoring Plan, as described below.

15.     Columbia Steel will develop a plan (the "Monitoring Plan") for monitoring all storm water discharges from industrial areas resulting from QSEs pursuant to the requirements of this Consent Decree and the IGP.

16.     During the term of this Consent Decree, Columbia Steel shall collect samples of storm water discharges from each discharge point in conformity with its Monitoring Plan included in its Stormwater Pollution Prevention Plan ("SWPPP") and upload the data to SMARTS.

17.     Columbia Steel shall comply with the analytical methods as required by this Consent Decree and the IGP.

18.     Columbia Steel shall post the complete laboratory results of all sampling required by this Consent Decree on SMARTS within thirty (30) days of receipt from the laboratory and notify Plaintiffs of the posting.

**C.  Visual Observations**

19.    During the life of this Consent Decree, Columbia Steel shall conduct and document visual observations pursuant to the IGP.

**D.  SWPPP and MIP Revisions**

20.    Within thirty (30) days of the Effective Date, Columbia Steel shall review the Facility SWPPP to reflect the terms of this Consent Decree and comply with the IGP.

21.    Columbia Steel shall notify Plaintiffs when the revised SWPPP is uploaded to SMARTS.  Plaintiffs shall provide comments, if any, to Columbia Steel within thirty (30) days of receipt of notice that the revised SWPPP has been uploaded.  Columbia Steel shall incorporate Plaintiffs' comments into the SWPPP or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments.

22.    Columbia Steel shall revise the SWPPP and incorporated Monitoring Implementation Plan ("MIP") if there are any changes in operations, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs implemented pursuant to any ERAs and upload the revisions to SMARTS.

23.    Columbia Steel shall notify Plaintiffs when SWPPP revisions are uploaded to SMARTS.

24.    Plaintiffs shall provide comments, if any, to Columbia Steel within thirty (30) days of receipt of notice that the SWPPP has been uploaded.  Columbia Steel shall incorporate Plaintiffs' comments into the SWPPP or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments.

25.    This section does not prevent Columbia Steel from submitting a SWPPP amendment or revision to SMARTS in any way, nor does it impair Columbia Steel's ability to modify the SWPPP unilaterally.

26.    Any disputes as to the adequacy of the SWPPP or revisions thereto shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

/ / /

**E.**     **Employee Training**

   **27.**     Within thirty (30) days of the Effective Date of this Consent Decree,
Columbia Steel shall develop and implement a training program (the "Training
Program"), in compliance with the IGP and its SWPPP.  At a minimum, the Training
Program shall include the following:

   **28.**     **Language.**  Columbia Steel shall conduct the Training Program in at least
one language or languages in which all designated employees participating in the
Training Program are fluent.

   **29.**     **Non-Storm Water Discharges.**  Columbia Steel shall train all designated
employees on the prohibition of NSWDs, so that employees know what constitutes a
NSWD, and how to detect and prevent non-storm water discharges to ensure compliance
with this Consent Decree and the IGP.

   **30.**     **Best Management Practices (BMPs).**  Columbia Steel shall train all
designated employees on BMP implementation and maintenance to ensure that BMPs are
implemented effectively to prevent the exposure of pollutants to storm water, to prevent
the discharge of contaminated storm water, and to ensure the proper treatment of storm
water at properties under Columbia Steel's jurisdiction that are regulated under the IGP.

   **31.**     **Storm Water Sampling.**  Columbia Steel shall designate an adequate
number of employees or contractors necessary to collect storm water samples from each
outfall identified in the Monitoring Plan.  The training shall include the proper sampling
protocols, including chain of custody requirements, to ensure storm water samples are
properly collected, stored, and submitted to a certified laboratory.

   **32.**     **Visual Observation Training.**  Columbia Steel shall provide training to all
designated employees regarding visual observations pursuant to this Consent Decree and
the SWPPP.

   **33.**     Training shall be provided by a qualified professional who is familiar with
the requirements of this Consent Decree and the SWPPP.  The training shall be repeated
as necessary to ensure that all employees assigned storm water responsibilities are

familiar with the requirements of this Consent Decree and the SWPPP.  All new designated staff shall receive this training before assuming responsibilities for implementing the Columbia Steel's SWPPP or Monitoring Plan.

34.    Columbia Steel shall maintain training records to document compliance with this Section and shall provide Plaintiffs with a copy of these records annually if requested.  These training records must indicate the date, instructor and nature of the training but are not required to disclose any employee information other than name.

**F.    Monitoring and Reporting**

35.    **Site Inspections.** During the term of this Consent Decree, Columbia Steel shall permit representatives of Waterkeeper to perform two (2) site inspections during normal operating hours during each reporting year (June-July).

36.    Waterkeeper shall provide Columbia Steel at least 48 hours' notice in advance of any site inspections.  For any site inspection planned to occur in wet weather during a qualified storm event, where a change in forecasted precipitation would frustrate wet weather observations and/or samples, Waterkeeper shall be entitled to reschedule the site inspection. Waterkeeper agrees to give Columbia Steel's representatives at least fifteen (15) hours' notice of its intent to reschedule a requested wet weather site inspection.

37.    Provided, that in the event of a dispute regarding Columbia Steel's compliance with this Consent Decree and provided a site inspection would be relevant to resolving the Parties' dispute, Waterkeeper may request an additional site inspection and the Parties agree to meet and confer regarding the request.  Columbia Steel shall not unreasonably deny Waterkeeper's request for an additional site inspection.

38.    Columbia Steel shall notify Plaintiffs when Annual Reports are uploaded to SMARTS.

/ / /

/ / /

/ / /

## IV.    ENVIRONMENTAL PROJECT, ATTORNEYS' FEES AND COSTS, AND STIPULATED PAYMENTS

### A.    Environmental Project

**39.**    To remediate the alleged environmental harms alleged in the Complaint, Columbia Steel agrees to make a payment of Seventy-Five Thousand Dollars ($75,000) to the Rose Foundation for Communities & the Environment (the "Rose Foundation") to fund environmental project activities that will benefit Southern California waters, including local wetlands restoration and/or preservation, within one hundred and twenty days from the Effective Date.  Payments shall be made via check made payable to the "Rose Foundation for Communities & the Environment" and delivered to: Rose Foundation, 201 4th St. Ste. 102, Oakland, California 94607.  Columbia Steel shall copy Waterkeeper and its attorneys on any correspondence relating to such payments.

### B.    Reimbursement of Attorneys' Fees and Costs

**40.**    Columbia Steel shall pay a total of four hundred and thirty-four thousand dollars ($434,000) to Plaintiffs for their reasonable attorneys' fees and costs incurred by investigating and preparing the lawsuit and negotiating this Consent Decree.  One hundred thousand dollars ($100,000) shall be due on January 1, 2022, and equal payments of twenty-five thousand, six-hundred ninety-two dollars and thirty-one cents ($25,692.31) shall be made on the first day of each following month for a period of thirteen months.  Upon missing a payment, and upon receipt from Plaintiffs of a notice to cure, the full remaining amount shall become immediately due if the non-payment is not cured within 3 business days.  Payment shall be made to Orange County Coastkeeper and delivered to Orange County Coastkeeper, Attn: Sarah Spinuzzi, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

### C.    Compliance Monitoring and Oversight

**41.**    Columbia Steel agrees to partially defray Coastkeeper's monitoring of Columbia Steel's compliance with this Consent Decree in the amount of Five Thousand Dollars ($5,000.00) per year that the Consent Decree is in effect.  Payment shall be made

to Orange County Coastkeeper and delivered to Orange County Coastkeeper, Attn: Sarah Spinuzzi, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626 within thirty (30) days of the Effective Date, and then on the 1-year anniversary of the Effective Date each year that the Consent Decree remains in effect.

**V.    DISPUTE RESOLUTION**

**A.    Continuing Jurisdiction**

42.    This court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree, unless a Party files and is granted a timely motion requesting an extension of time for the court to retain jurisdiction.  The court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

**B.    Meet and Confer**

43.    A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute.  The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date the notice is received.  The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

**C.    Dispute Resolution**

44.    If the Settling Parties cannot resolve a dispute by the end of the meet and confer process, the Parties may agree to enter into the Alternative Dispute Resolution process provided by the United States District Court for the Central District of California, including but not limited to stipulating to a hearing before a Magistrate Judge.

45.    If the Settling Parties cannot resolve a dispute by the end of the Alternative Dispute Resolution process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District

Court for the Central District of California.  The Settling Parties agree to request an expedited hearing schedule on the motion if requested by any Settling Party.

**46.    Burden of Proof.**  In any dispute resolution proceeding, the moving party shall have the burden of demonstrating compliance or non-compliance with the terms of the Consent Decree.

**47.    Enforcement Fees and Costs.**  Litigation costs and fees incurred in conducting a meet and confer session(s) or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing party in accordance with the standard established by § 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

## VI.    MUTUAL RELEASE OF LIABILITY, DISPUTE RESOLUTION, AND COVENANT NOT TO SUE

### A.    Plaintiffs' Release

**48.    **Upon the Effective Date of this Consent Decree, Plaintiffs, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, Columbia Steel (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in the Notice Letter and Complaint up to the Effective Date of this Consent Decree.

### B.    Parties' Release

**49.    **Unless specifically provided for in this Consent Decree, the Settling Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Settling Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary

companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from any additional attorney's fees or expenses related to the resolution of this matter.

50.     Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Columbia Steel's compliance with the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

## VII.   FORCE MAJEURE

51.     A Party shall not be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control as defined by the Force Majeure provisions herein, which includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, pandemic other than COVID-19, unless an order by an agency of competent jurisdiction issued after the Effective Date of this Consent Decree results in the inability to perform or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability to obtain the necessary authorizations, approvals (other than landowner authorization(s) or approval(s)), or permits from, any governmental agency; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available, though the cost of such material or equipment is not a factor in whether it is reasonably available.  Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to

overcome the failure or performance.  Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all of the financial obligations required under this Consent Decree.

52.    If Columbia Steel claims compliance was or is impossible as defined by the Force Majeure provisions herein, they shall notify Plaintiffs in writing as soon as possible, but in no event more than five (5) business days of the date that Columbia Steel learns of the event or circumstance that caused or would cause a violation of this Consent Decree (hereinafter referred to as the "Notice of Nonperformance").

53.    Within ten (10) days of sending the Notice of Nonperformance, Columbia Steel shall send Plaintiffs a detailed description of the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Columbia Steel to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Columbia Steel shall adopt all reasonable measures to avoid and minimize such delays.

54.    The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible as defined by the Force Majeure provisions herein due to an event or issue in Paragraph 51, despite the timely good faith efforts of Columbia Steel, new deadlines shall be established.

55.    If Plaintiffs disagree with Columbia Steel's Notice of Nonperformance as defined by the Force Majeure provisions herein, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Article V.  In such proceeding, Columbia Steel shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by

impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VIII.  MISCELLANEOUS PROVISIONS

**56.**  **No Admission of Liability.**  Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Columbia Steel maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

**57.**  **Assignment.**  Subject only to the express conditions contained in this Settlement Agreement, all of the rights, duties and obligations contained in this Settlement Agreement shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a new successor or assign (a "Transferee") will continue Columbia Steel's operations at the Facility, Columbia Steel shall notify Waterkeeper ten (10) days in advance of the proposed transfer (the "Transfer Notice") and within ten (10) days following the Transfer Notice, Columbia Steel will provide Waterkeeper with a written assignment duly executed and acknowledged by Columbia Steel and the Transferee assigning Columbia Steel's obligations under this Consent Decree to the Transferee.

**58.**  **Construction.**  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms that are defined in the IGP, the Clean Water Act, or specifically herein.

**59.**  **Choice of Law.**  The laws of the United States shall govern this Consent Decree.

**60.**  **Severability.**  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**61.**  **Correspondence.** Unless specifically provided for in this Consent Decree,

all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail to all parties identified below:

If to Waterkeeper:

> **Orange County Coastkeeper**
> Attn: Sarah Spinuzzi
> 3151 Airway Avenue, Suite F-110
> Costa Mesa, CA 92626
> Email: sarah@Waterkeeper.org

If to Columbia Steel:

> Gustavo Theisen
> Columbia Steel, Inc.
> 2175 N. Linden Avenue
> Rialto, CA  92377
> ckennedy@csirialto.com
>
> AND
>
> Brian Neach
> Pacheco & Neach PC
> 3 Park Plaza, Suite 120
> Irvine, CA  92614
> bneach@pncounsel.com

**62.**     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail.  Any change of address or addresses shall be communicated in the manner described above for giving notices.

**63.     Effect of Consent Decree.**  Except as provided herein, Waterkeeper does not, by their consent to this Consent Decree, warrant or aver in any manner that Columbia Steel's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.  Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Columbia Steel to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

**64.     Counterparts.**  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be

originally executed counterparts of this Consent Decree.

**65.    Modification of Consent Decree.**  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.  If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

**66.    Full Settlement.**  This Consent Decree constitutes a full and final settlement of this matter.

**67.    Full Integration.**  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

**68.    Authority of Counsel.**  The undersigned representatives for Waterkeeper and Columbia Steel each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

**69.    Authority of Parties.**  The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

**70.    Assignment.**  The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

/ / /

/ / /

/ / /

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

**APPROVED AS TO CONTENT**

Dated: October 1, 2021               By: /s/ Garry Brown
                                     Garry Brown
                                     Executive Director
                                     Inland Empire Waterkeeper
                                     Orange County Coastkeeper

Dated: October 1, 2021               By: /s/ Gustavo Theisen
                                     Gustavo Theisen
                                     President, C.EO.
                                     Columbia Steel, Inc.

**APPROVED AS TO FORM**

Dated: October 1, 2021               By: /s/ Sarah J.  Spinuzzi
                                     Sarah J. Spinuzzi
                                     Counsel for Plaintiffs

Dated: October 1, 2021               By: /s/ Brian Neach
                                     Brian Neach
                                     Counsel for Columbia Steel, Inc.

**IT IS SO ORDERED.**

Dated: January 5, 2022               _____
                                     FERNANDO L. AENLLE-ROCHA
                                     United States District Judge